Huertero v. United States Mr. Romano, you needed that whole bag for that case? You don't have any of these things now? He's got an iPad, I've got a MacBook. You could put it all inside of a, you know, a unit case. Good afternoon, your honors. May it please the court, I'm Nancy Winkleman for the appellant in this case. I'd like to introduce with me at council table Jim Martin on the far right, who was trial counsel and is co-counsel on appeal, along with my colleague Aaron Fickus. I don't think we've ever argued, obviously it's not going to alter our outcome. The court knows you well, but I don't think I've ever been on a panel and argued in front of you before. And I want to start by commending your brief. Again, it does not mean you're going to win, it does not mean you're right. But as complicated as this case is, and it's not complicated in the law, but the facts are messy. Your chart, you caused me to do something I haven't done in years. You caused me to print something out. And Weber's idea that was to put that chart in the brief, I really want to commend you. It's a very, very helpful chart. A dear friend who's been in practice many years once told me, I don't believe it, but she said the only thing she learned in law school was the person with the chart that's best wins. So I didn't say that's going to happen here because I'm not sure you're right. And you've got a tough hill to climb, but I wanted to commend you on the brief and on that chart. Well, thank you so much. It's been my cheat sheet as well. I have it here. I have laminated copies if the court would like that as well. I needed to start by reserving three minutes for rebuttal, so I'd like to do that before we get into it. Okay. And let me start by asking this. Why shouldn't we wait and see what the Supreme Court does in the cases that they are deciding the issue of whether or not the statute, the Warner Act, is in the FTCA subject to equitable tolling? If it is subject to equitable tolling, it seems to me you're in a lot better position than if you're not. I'm sure your colleague is going to argue that you still don't win because you don't have the kind of deliberate protection of your own interest. It wasn't you, but of your client's interest that is required for equitable tolling. Why shouldn't we just wait and see what the Supreme Court decides? Judge McKee, that would be certainly a reasonable way for this court to proceed. I think that this case cries out for equitable tolling for all the reasons that we discuss in our brief. Certainly. If it's jurisdictional, there's nothing we can do. And I appreciate that that issue is before the Supreme Court, and I certainly think it would be reasonable for this court to, if it was going to decide the case on equitable tolling grounds, to hold off and see what the Supreme Court does. Under this court's current precedent in Santos, the court could decide equitable tolling. And in any event, while I think we have and we do have a compelling argument on equitable tolling, especially given the prong of equitable tolling that relates to circumstances outside the litigants' or counsel's control. And here it's especially, and hopefully the chart helps bring this home. One important thing wasn't outside control, though, which was taking an appeal to the district court from the agency's denial of reconsideration. That was well within counsel's ability. That's true, Your Honor, and that goes to both the diligence and both prongs of equitable tolling. At that point, at that time, though, plaintiffs understood that the government was going to remove the case and then file a motion to dismiss, and there would be an unopposed motion to dismiss, and the case would proceed in a rather straightforward way. As the courts are aware of. At that point, there was nothing pending in federal court, right? So you could have filed in federal court without running into the problem you ran into later on when you had to bring into the case. That's correct, Your Honor. And, I mean, here we have, there's an issue. We're going to have duplicative, according to the government, administrative claims. If, in fact, plaintiff had taken the tact of filing another action in federal court, either an appeal from the reconsideration or a whole separate from the denial of reconsideration or a separate action, we're going to have duplicative federal actions, and certainly not any outcome that this court wants to countenance. Let me put aside. Hold on a second. I'm not sure I would concede what you just said, because wouldn't the district judge, once that falls into your lap as a trial judge, you just look at it and say, well, they have a right to exhaust under the Westfall Act and apply the equitable tolling under Santos. I think you're in very good shape under Santos, if that remains good law. So then you get rid of the duplicative action problem solved by a federal district judge. No problem. It may be that that would have worked. I can't say. In this case, the district judge took over six months to grant an unopposed motion to dismiss. So I think banking too much on, well, if you had done this, then you wouldn't have had this problem, because the district court would have done that, is a little bit tricky, given the history of this case in the district court, and certainly mean no disrespect to the district court in that regard. It's just the way it worked out. But the way it worked out ends up with a government taking over six months to remove a case, a district court taking over six months to grant an unopposed motion to dismiss, and then by giving effect to this first administrative claim, a client being out of court. So the equitable piece of it, I think, is compelling and strong. But let me talk about the statutory piece, because I appreciate that the equitable tolling issue is before the Supreme Court at this time. Before you get to that, would I be correct in thinking that a more narrow way for us to decide this case, assuming we agree with your position, would be under the Westfall Act Savings Clause, rather than equitable tolling, which opens the door quite a bit. Am I correct in thinking that? There certainly is a narrow way that this court can decide the case under the Westfall Act. Absolutely. Except the district court, clearly, it seems to me, properly concluded you didn't fit within the procedural requirements of the Westfall Act, because of a weird twist of circumstances in the way things happened to break and what was pending in state court. But nevertheless, it was the court's conclusion you didn't fall under the Westfall Act. Well, let me try to convince this court why the district court was wrong. And if I'm successful in that endeavor, then the court can write a narrow opinion under Westfall, and we don't have to worry about equitable tolling. So for me, the easiest way to think about it, and to say that this chart simplifies things is a bit ironic, because the chart is rather difficult to follow in the first instance. But the easiest way for me to think about this case, and I've struggled mightily with it, is forget about plaintiff's first administrative claim for a moment. Just put that to the side. Without that claim, we wouldn't even be here. It's an easy case. The plaintiff filed her state court lawsuit within two years of the accrual, so the administrative claim is deemed timely under the Westfall Act and the first prong of 2401B. The government removes, which is what it's supposed to do under Westfall, files an unopposed motion to dismiss just how things were supposed to proceed under Westfall. The district court grants the motion to dismiss. The plaintiff then files her administrative claim the very next day and then files her federal court action within six months. Everything's fine. It's an easy case. There's nothing for us to be talking about. No need to think about equitable tolling. The problem, of course, is that out of an abundance of caution, to be extraordinarily diligent, to use the terms of equitable tolling, when he learned that the treating physician was considered to be a federal employee, plaintiff's counsel took the step of realizing, now I'm in this rather complicated land of the Federal Tort Claims Act and its various deadlines, and out of an abundance of caution, not carelessness, I am going to make sure to protect my client's rights and I'm going to get that administrative claim before HHS now. Sort of in life we think about what harm can it do? You know, it might help. It can't hurt. Didn't realize that he was then, at least according to the district court, setting into motion this very strange, complicated, bizarre series of events that would find us here today. So the question is, what counts for purposes of the FTCA and the Westfall Act? Is it the first administrative claim? The premature, unnecessary, out of an abundance of caution claim? Or is it the second claim? And here's why the court can rule, as Judge Sirica suggested, in a narrow way that it's the second claim under the Westfall Act. And that's because at the time that plaintiff filed the first administrative claim, there was no Westfall Act in the case. The government hadn't removed, the district court hadn't dismissed. It was only at the time that plaintiff filed that, I'm sorry, that the district court dismissed that the Westfall Act is triggered. So anything that happened before that, and clearly the second claim is timely under the Westfall Act, anything that happened before that is a non-issue. You want the second claim to be the meaningful one? The second, absolutely. Then you're inviting us to split, are you not, create a circuit split with the First Circuit? Because in Roman Council, the First Circuit held that the second claim was a nullity. In fact, if this court were to rule in our favor, I think it would be entirely consistent, not a split with the First Circuit, and this is why. The First Circuit in Roman Council wasn't dealing with the Westfall Act. It was dealing only with the timelines under 2401B. It didn't mention it even, did it, the Westfall Act in Roman Council? It wasn't involved, so there was no reason to mention it. The court there said, in essence, a plaintiff can only get one bite at the apple, can't keep filing these administrative claims to restart a six-month clock. Which is what you said in advance. That's why you didn't file your second case in federal court. It's the same doctrine. You'll get one bite at the apple. We get one bite at the apple once the clock starts ticking. The clock hadn't started ticking when we filed that first administrative claim. The case hadn't been removed. The Westfall Act wasn't on the table. The clock starts ticking after the case is removed, the government dismisses, and then we file our administrative claims. So for purposes of the Westfall Act, that's the first administrative claim. That's the claim that counts. The one before it is null and void. Now if a plaintiff had gone and filed, in this case, what would have been a third claim, that would have put us in the land of Roman Council. You're saying two bites at the apple is allowed but three bites aren't? I'm saying one bite at the apple. It's one bite at the apple when it's time for that apple. I don't know what the right verb is. Thank you. It's only time after the Westfall Act procedures have come into play and the timing is triggered. The only other case, as was the court in Roman Council, this just doesn't come up that frequently. What's so strange is that counsel, to use your phrase, out of an abundance of caution, over eagerly made this honest mistake by filing early, but for reasons that I am having trouble grasping, he didn't show that same zeal because if he had over eagerly filed his appeal and had two federal cases going, then we're not here today, the problem's solved. I can't tell you what was in anybody's head. I can say at that point he knew that he had to wait for the district court to dismiss and kept calling chambers as we've argued, you know, what's going to happen here. But what he knew even more was what the agency told him. When he got the denial of reconsideration, did it not say right on there, you must file an appeal within six months? It didn't do it. Actually, the language was, nay, that the must part and the forever barred part goes to the two-year part of 2401B that's not at issue here. If we read this the way that you do, what problems are we creating for other cases? I have thought and thought and thought about that, Judge Sirica, about the narrowest way this court can write without creating problems, and I don't see problems created. The government may come up and say what they are. I don't see problems. The holding of this court can be a narrow holding. The plaintiff does only get one bite at the apple. Here, the bite doesn't begin, the apple doesn't ripen, until the Westfall Act is triggered. It wasn't triggered when plaintiff filed the first administrative claim. So that administrative claim is null and void, annullity, whatever words the court wants to use. The court won't be opening up the floodgates to duplicative litigation and multiple administrative claims. Plaintiffs certainly couldn't then, as I mentioned before, have filed once the apple ripened and the six-month clock was triggered. That was it. That was it on our time chart, the right half of the chart. The apple ripens exactly when? The apple ripens when the district court, when the Westfall Act is complied with, when the government removes and then the district court grants the unopposed motion to dismiss. Not on July 11th when the HHS denied? It's not triggered then? We say that whole claim and denial is irrelevant. It's irrelevant because at that time the Westfall Act hadn't come into play. The government hadn't removed. The district court hadn't dismissed. He jumped the gun. He jumped the gun. But this court can interpret without opening the floodgates to people coming in and saying, well, I jumped the gun too and I jumped the gun too, you still only get one bite at the apple. It's just that it doesn't start, the clock doesn't start running until the procedures of the Westfall Act have been followed, and they certainly were here indisputably. I think you saved time. I did save three minutes. Thank you. Mr. Bober? May it please the Court, David Bober from the United States Attorney's Office for the District of New Jersey. I know you're an advocate here, and you have to do what advocates do and that is advocate the position of your client. You represent the people of the United States, and I can't help but think that somewhere under your adversarial garb, you sympathize with what happened to this plaintiff here. And I won't ask you to commit to that. One, you probably don't have the authority to commit to it. Two, you might want to have a job when you get back to the office, so you might not want to go that far. But it strikes me, and I'm speaking only for myself, we haven't confessed this case, that there's something really inequitable here. You've got a woman who may well have a very meritorious claim. We have no idea what the merits of her claim are. They may be totally off the wall, but they may also be very meritorious. Something redressable may have happened to her son during the birth process. You've got this procedural morass, this Kafkaesque journey, that the plaintiff was taken on because of the subtleties of the Federal Tort Claims Act under a situation where your agent was acting in a theater where I would assume someone going in for that procedure had no way of knowing that this doctor operating on me is really a federal employee right now. So I'm talking Federal Tort Claims Act. I'm not talking tort in the New Jersey law. They found that out. They do what seems to be perfectly reasonable, although it technically is not, according to Hoyle. And because of that, someone, two people actually, the mom and the child, who may be very deserving, again, the claim may be totally not meritorious, we don't know, but because of this procedural Kafkaesque journey they've been led on, they're out of court. Does that make any sense to you, not necessarily as a lawyer, but just if you came and looked at this case cold, wanting to do equity, as I hope the government representative does, how does that strike you? I do sympathize with the plaintiff's situation, Your Honor, and that was acknowledged in our brief. And the district court sympathized with them as well. I acknowledge it's not the most equitable resolution of the case. But I think that on that note, Congress has created a system. Congress, the United States, is faced with tens of thousands of these claims per year, and it's not really just about this one case. Congress has created a claim presentment system under the Federal Tort Claims Act that provides for the orderly presentation of all claims. I don't want it to be more orderly here. She goes to state court thinking doctor, medical malpractice, that's where anybody, any lawyer would think, that's where you go. So they go to state court and they find out, well, wait a minute, this doctor was a federal agent at the time. We're not talking state law, we're talking federal law. So they file with the administrative agency, but meanwhile the state case is still pending, so they feel there's nothing they can do in federal court. And that was the mistake, Your Honor. It was not an orderly presentation because it didn't follow the mandate 2679. It seems to me it was incredibly orderly. It may have been technically, in a kind of Kafkaesque way, erroneous. Well, it was erroneous because, sure, when you file a complaint in state court, you don't know you're dealing with a federal entity. But at some point you become on notice that you're dealing with a federal entity. And sure, that happened relatively quickly. It was within one month. And so when you find out you're dealing with a federal entity, you say to yourself, well, what should I do? You open a statute book, 28 U.S.C. 2679 D5 was enacted to address a situation like this, to save this kind of claim. And so what do you do? You wait for the complaint to be removed. You wait for it to be dismissed. And as long as you file the administrative claim within 60 days, the claim will be timely. You'll get the benefit of your state court filing. The second complaint. That's what she's saying. The second administrative procedure would be the one she was just saying. The plaintiffs are asking the court to read the first claim out of existence, to pretend it never existed. The agency was in receipt of a validly presented claim. It had a some certain. It was signed. It described the claim. People at the agency have to address this. They have to figure out whether it's timely. They have to figure out whether it's meritorious. People there work on it. They issue a denial. They get a request for reconsideration. People there have to work on that. They send another denial letter. Now the plaintiffs want you to pretend as if none of that ever happened. I'm not sure you're according enough subtlety to their argument. Because everything you just said is unassailable. The agency did the right thing. It was untimely and there was no grounds for reconsideration. But as I understand what counsel is arguing, Ms. Winkleman, is that that's not a nullity for purposes of the agency process. The agency, she may even admit unrebuttedly, did the right thing. But for purposes of the Westfall Act, and when the savings clause of that act gets triggered, it had no effect. It's not as if it never happened for any purpose. It's just for purposes of the Westfall Act, it didn't have any effect. What's your response to that? It had effect for purpose. As you know, the FTCA has two statute of limitations. It has the two years and the six months. And actions have consequences. And when you file an administrative claim with the agency and you get back a letter in your hand that says your claim is denied, if you disagree you may file an action within six months, and it cites 28 U.S.C. 2401B, and then you go read the statute, and it says if you don't file a claim within six months, you're forever barred, forever barred. And in holding that piece of paper in your hand that says you're forever barred, you still don't file a claim, and you're proceeding under a different lawsuit. It's going under a different tract. So is it then running around the administrative agency process and the statutory language you just described? Is that the crux of your argument? I'm not sure I understand the question. It's once you've filed your claim in state court, it seems to me. Counsel was told to file within six months. That's what I was pressing Ms. Winkleman on earlier. So I'm having trouble getting my mind around the excusable neglect or equity in not filing when that form says right here file within six months if you want to take an appeal. But that doesn't undermine her statutory argument. Her statutory argument is that the Westfall Act is not implicated here. And your response to that is it must be implicated because when the agency says its denial letter, it cites them? It doesn't cite the Westfall Act. No, it doesn't even cite the Westfall Act. It just cites the FDCA, right? When you file your action in state court and then you realize you're dealing with a federal entity, it seems to me you've got two paths that you could go down. You can go down the Westfall Act path and try to take advantage of that clause or you can file an administrative claim and they could have argued that it would have been timely under Santos and they would have had a good argument. In the briefs they suggest that we would have moved to dismiss on timeliness and we might have, but at least there was an argument under Santos. How would it have been timely under Santos? Excuse me? How would it have been timely under Santos? Because they could have argued, if they had filed a lawsuit within six months of the denial of the first administrative claim, the claim was filed more than two years after the birth and they could have argued under Santos that they had no knowledge despite reasonable diligence or despite extraordinary diligence that they were dealing with a federal entity. As soon as they realized they were dealing with a federal entity, they filed their federal claim and then the two years should be equitably told. That's what Santos is all about. It's all about equitably telling the two years because you don't know you're dealing with a federal entity. It says nothing about the six months. And here, in essence, they'd be asking you to tell both. They'd be asking because they were untimely on the two years and they didn't file within the six months. And so it's unclear to me even what... If we can go for a second to the total issue, I understand that it's a statute of limitations and we're talking solid immunity here and therefore it's strictly construed, but it seems to me the Westfall Act is Congress's deliberate intent to recognize that the strict structures of sovereign immunity can cause problems and they waive sovereign immunity in a way which is very, very different than the normal waiver to open up these kinds of special considerations which we normally would never get into when you're talking about a waiver of sovereign immunity because it is so strictly construed in favor of the sovereign, as you're saying. And that's why, and I'm not sure which way, even if... I'm not saying who would win, but I don't know yet who would win. I'm starting to think this thing's really not allowed. If we were to go down the equivalent toiling road, even though you could argue that not all I's were died, not all T's were crossed because when they were first denied the administrative claim back in July of 2012, they could have immediately gone to federal court, or at least within six months of that, that wasn't done. You could argue that that wasn't the kind of zealous protection of one's rights which is required for equitable toiling. But at least that seems to me an easier issue to get our heads around in terms of what is equitable, what is reasonable, and the kind of unreasonable result which flows from your interpretation of the Westphal Act and Santos and equitable toiling. Respectfully, Your Honor, I don't think there's anything unreasonable about my interpretation of the Westphal Act. It prescribes a very specific procedure. Removal, dismissal, and filing a new claim. And the Court has held in more cases than I can possibly cite that the requirements of the Federal Tort Claims Act must be strictly construed. When did removal happen? You just said removal, dismissal, new claim. When did the removal happen? Removal happened after their first claim was filed. So why is the first claim relevant for purposes of the Westphal Act? It's relevant. This is what Roman Cancel and Willis is relevant because you get Westphal Act cases. Those aren't Westphal Act cases at all. It's not mentioned. You're right, Your Honor, I'm not. Notice in 1983, Westphal Act wasn't even enacted into the law then. Correct. Roman Cancel was after it. There's dicta in Roman Cancel that says the second claim is a nullity. I read that, but they're not Westphal Act cases. They're not Westphal Act cases. I'm not aware of any cases. Counsel from the other side is advocating for this really narrow sort of subtle exception, or I don't even know if it's an exception, but asking us to write an opinion that says the Westphal Act is triggered consistent with what you just said upon the removal. It's a dismissal. If you look at the second claim here, it was identical to the first claim. I know. It described the same, everything was the same, except for the dismissal. The purposes of the Westphal Act savings clause, why don't you do this because maybe my colleagues would be interested in this. I know I am. What harm would we do? Give us the floodgates that we're going to open if we were to issue a rule that says the Westphal Act is triggered once the removal occurs, the federal court, which in this particular factual context only would mean that the first claim is irrelevant. I think you would be doing harm to the administrative process. Yes, we would be. You would be doing harm to the administrative process. Because put yourself in the shoes of an agency. Well, if it's inconsistent with the statute, and if it's not inconsistent with the statute, how would we be harming the administrative process that the statute is part of? Well, put yourself in the shoes of an agency when a plaintiff files a complaint in state court, just like here, a plaintiff files a complaint in state court and then files an administrative claim. What is the agency supposed to do with that claim? The agency did the right thing here. I'm not challenging it. Dismissed it? Good. It was untimely. Reconsideration? Nope. You don't have grounds. If we adopt this rule that I'm positing now, as I understand it, all that's going to happen is the agency is going to have to do its work and adjudicate the case on the merits. And we're not saying it was wrong when it first said it was untimely. We're just suggesting that changed circumstances are such that it has to go and adjudicate the merits. But if you take it out of this case and imagine a scenario where, for example, the administrative claim was timely. Well, if that's adjudicated, then you've got all kinds of other issues. You've got res judicata and all kinds of other things. Exactly. It triggers a procedure at the agency. But why would the agency go and do any work on the case if they knew that there was a possibility that the case could later then be removed and a new claim filed and the first one didn't matter? It didn't do any work. It just looked at the date and said you're untimely. Goodbye. That was in this case. Your Honor's question was what harm would it do to the administrative process. So I'm positing a properly presented time and claim that is presented to the agency after a state court complaint has been filed. That's going to trigger a response at the agency. So it's timely, then the agency is going to do its work. Correct. It's going to adjudicate the merits of the case. Yes, with the possibility that the state court complaint will later be removed and the Westfall Act will trigger and a second claim will be filed. So all the work on the first claim was pointless. It will be triggered at that point. One, again, if the agency denies the claim, this doesn't happen. But in the scenario that Judge Harbin is positing, the state court case is kind of irrelevant too because the Westfall Act will only be triggered when the federal district court supplants the plaintiff with the United States and dismisses the claim. At that point, the clock starts to tick. You've got six months to present your claim to the administrative agency. If the agency then denies it, you've got 60 days from that denial to bring your claim. Am I missing something here? Well, I think you are, Your Honor. What you're missing is that you're obliterating an administrative claim. You're reading it out of existence. Show me what part of the statute I am obliterating. Look at the Westfall Act and tell me which provision is inconsistent with the scenario that I just put to you. I think it's the one percentage. The Westfall Act. The statute follows in the state court within two years. Okay. Government is substituted as the defendant, removed from state court to federal court. Federal court dismisses the claim, which I'll use to exhaust. Plaintiff then has 60 days following the dismissal from federal court to file an administrative claim before the appropriate federal agency. If the claim is denied, the plaintiff has six months to file in federal court. That's 28 U.S.C. Section 2679B. What I just posited is inconsistent with that statutory scheme. You'd be assuming the Westfall Act requires that the claim be presented after dismissal, and so you'd have to hold that presenting the same claim for a second time is presenting. The claim had already been presented in this case. You'd have to hold that presenting the same claim to the same agency a second time is, quote, presenting. Well, I think it is. You might be presenting again, but presenting again is still presenting. That's an issue that you both agree. Do we have any case? I don't remember any case law on this issue of whether presented is exclusively the first presentment. My research didn't cover a case. The statute is 2675, 28 U.S.C. 2675 is the presentment statute, and there is a mailbox rule case. I think it's Lightfoot v. United States, which talks about presentment, but I'm not aware of any case that says first presented. But one argument in our brief is to the extent of any ambiguity between whether a claim is whether presented means first presented, that has to be construed in favor of the United States. Why? Because of the waiver of sovereignty. Because of the waiver of sovereignty. That's my whole point. Here, the Westfall Act says that this waiver is a very different kind of waiver than we usually get into. It's not your traditional waiver of sovereign immunity. Congress is very concerned about this very situation and acted legislation to address it, and it seems to me that gets us out of the universe that we normally are into when we talk about the strict interpretation we give to waivers of sovereign immunity. It's very different to Westfall Act. Lesson of time has expired, Your Honors. You don't need to answer the question. Well, you can sit down if you want to answer the question. Judge Rodman, if you choose to say anything else on that. I'm happy to hear your question. You may not be happy when you hear it. I hear the question. After you hear this question, if you want to answer mine, sit down. I can do that. I have a practical question. Have you done many FDCA cases? Have I? Yes. Yes.  I mean, I've never seen a scenario like this. I've never seen it either. I assume you've got the case. Correct me if I'm wrong. Take the fifth if you want. I assume when you've got this case, you're like, oh, this is bizarre. I've never seen one like this. You went around the office. You asked, has anybody seen one like this? What did you learn? I've handled a fair amount of FDCA cases. You guessed this one is bizarre. I did handle one that was very similar, except when I filed a motion to dismiss on basis of failure to exhaust the plaintiff's opposed motion. In this case, it was an unopposed motion. The opposed motion? They opposed the motion. They didn't want to exhaust? They opposed the motion. Because if you think about it, at the point when they had, in this case, at the point where removal had happened, the claim had already been presented and denied. So their argument in that case, the district court case before Judge Arvinas, was that the exhaustion effectively was complete before the removal occurred. Oh. And Judge Arvinas brought that argument. I'm still litigating that case. I think I disagree with it. But that was one option that they could have proceeded on here. But other than that, yeah, I've been doing this, I guess, eight years, and, no, I've never seen this scenario before. Okay. Thank you. That's very helpful. Thank you, Your Honor. Ms. Winkelman? I'll be brief, Your Honors. On the last point, the second-to-last point that came up about the meaning of the word present in the statute, which the government relies on, I commend to the court the regulation that the district court relied on 28 CFR Section 14.2. 14.2? 14.2, which defines when a claim, quote, shall be deemed to have been presented, end quote, for purposes of the FTCA. And I can read the language. This second claim fits precisely within. So the court's not going to be doing any violence to the meaning of the word present in the FTCA. Can you just read it? Sure. For purposes of the provisions of 28 U.S.C. Sections 2401B, that's the statute of limitations that we have here, 2672 and 2675, a claim shall be deemed to have been presented when a federal agency receives from a claimant his duly authorized agent or legal representative, an executed standard Form 95 or other written notification of an incident accompanied by a claim for money damages in the sum certain for injury to or loss of property, personal injury or death alleged to have occurred by reason of the incident, and the title or legal capacity of the person signing and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative. So the court does not have to worry about doing violence to the statute or to the word present in the statute. Did the district court do violence to the statute? I'm sorry? Did the district court do violence to the statute? I think the district court did do violence to the statute. I do. How? By saying for the first time? Correct. That's exactly right. For giving effect to a premature, unnecessary, prematurely filed administrative claim rather than to the claim that actually mattered, and that was the claim that came after the Westfall Act had been put into motion. What if this case had been removed before the first claim was filed with the agency? If it had been removed and dismissed, then we'd be, this is why I keep having to look at this chart, if it had been removed and dismissed, then we would be in the simple case that I laid out in the opening part of my argument. Removed, dismissed, and then a claim is filed. All right. Then you're in the ballgame in the agency. Correct. What if it's removed, first action filed with the agency, dismissed as untimely by the agency, and then dismissed by the federal district court? I think without having thought it through, and every time I think this case, start thinking it through, I get a little bit confused. But I think that in that scenario, Judge Hardiman, we would be in the same place that we are now. I think the district court has to, the government doesn't just have to remove, the district court has to dismiss in order for everything to flow into motion. I was afraid you were going to say that because. Well, help me if there's a way not to. Because if what you just said is correct, then for purposes of when the Westfall Act Apple ripens, it's not when the removal occurs. It's when the district court dismisses for failure to exhaust, which is why our second administrative claim was perfectly timely. Filed the day after. Filed the day after. And the federal lawsuit then filed within six months after the agency denial. So you want us to treat the first claim as a nullity, the first circuit, and the non-Westfall Act case of the second claim is a nullity. And I think, I don't think it's just, I think it's an apples and oranges difference up there. Yeah, yeah. Stay with the fruit analogy. I may be taking it too far. I just want to end, and I see my time is up. And Judge McKee, Chief Judge McKee used the word Kafkaesque, and I have to tell you that that's the word that keeps coming to my mind. The ironies here abound. It is strange beyond strange to interpret a statute that's designed to save claims in a way that would preclude a claim. It's strange beyond strange to have a plaintiff who is too diligent and a government that's arguably too slow and a district court that's arguably too slow put everybody in the position that we're in here today. The government is not prejudiced in one way. I didn't hear the government say that. It hasn't argued that. This is a sui genuis, genuis, I can't even speak anymore. A very narrow, as the government's lawyer, unique set of circumstances. The court is not going to be opening some Pandora's box by deciding this case in our favor on statutory grounds. And thank you for your consideration. Thank you for taking that on the advisement. We'll take about a five-minute break and then move to the next.